UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-41364-bem |
| | ) | |
| ALICE DENISE RICH, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GEORGIA UNITED CREDIT UNION, | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| v. | ) | |
| | ) | |
| ALICIA DENISE RICH and JAMES A. | ) | |
| MANTOOTH, non-filing Co-Debtor, and | ) | |
| MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Movant filed a *Motion for Relief from Automatic Stay and Co-Debtor Relief from Automatic Stay* seeking an Order for relief.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom **342, U.S. Courthouse, 600 East First Street, Rome, Georgia** at *10:15 a.m. on August 21, 2019.*

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (if you do not have an attorney, you may wish to consult one). If you do not want the court to grant the relief requested, or if you want the court to consider your views on the motion, then you or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including address) you served the response. The address of the Clerk's office is: **Clerk, United States Bankruptcy Court, 600 East First Street, Room 339, Rome, Georgia 30161-33187**. You must also mail a copy of your response to the undersigned at the address shown below.

If a hearing on the motion for relief from automatic stay cannot be held within thirty (30) day, Movant waives the requirement for holding a preliminary hearing within thirty days of filing

{File: 00140979.DOCX / }

the motion and agrees to a hearing on the earliest possible date. Movant waives the requirement
that a final decision be issued within that period.

This 24th day of July, 2019.

Respectfully submitted,

KAPLAN, BOGUE & COOPER, P.C.

/s/ _____
Virginia B. Bogue, Georgia Bar No. 065695
5901 Peachtree Dunwoody Road
Suite 415-B
Atlanta, GA 30328
(678) 384-7016 telephone
*vbogue@kbclegal.com*
Attorneys for Georgia United Credit Union

2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-41364-bem |
| | ) | |
| ALICE DENISE RICH, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GEORGIA UNITED CREDIT UNION, | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| v. | ) | |
| | ) | |
| ALICIA DENISE RICH and JAMES A. | ) | |
| MANTOOTH, non-filing Co-Debtor, and | ) | |
| MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR RELIEF AND CO-DEBTOR RELIEF FROM AUTOMATIC STAY

COMES NOW Georgia United Credit Union (the "Credit Union" or "Movant"), pursuant to Rules 4001 and 9014 of the Bankruptcy Rules and §362(d) of the Bankruptcy Code, to request relief from the automatic stay provided by §362(a) and the Co-Debtor stay provided by §1301(c) of the Bankruptcy Code. In support herein Movant alleges as follows:

1.

Alicia Denise Rich (the "Debtor") filed a petition constituting an Order for Relief under 11 U.S.C. Chapter 13 on June 11, 2019.

2.

The Debtor is the owner of a 2011 Chevrolet Suburban, VIN 1GMSCJ307BR258813 (the "Vehicle") which is pledged as collateral for a loan to James A. Mantooth, the non-filing Co-Debtor (the "Note"). A copy of the Non-Borrower Pledge of Shares and Security Agreement dated

3

April 27, 2017 is attached hereto as Exhibit "1" and its contents are incorporated herein by reference. A copy of the Note and Certificate of Title are attached hereto as Exhibits "2" and "3," respectively, and their contents are incorporated herein by reference.

3.

The Vehicle is not listed in the Debtor's Schedules.

4.

The balance due to the Credit Union on the Note is in the amount of $11,817.09 and the NADA Clean Trade-In value of the Vehicle is $11,675.00. Therefore, there is no equity in the Vehicle for benefit of the estate.

5.

The automatic stay provided by §362(a) and the Co-Debtor stay provided by § 1301 of the Bankruptcy Code prevent Movant from enforcing its state law right and remedies against the Vehicle and the non-filing Co-Debtor.

6.

Good cause exists, including the lack of adequate protection, to grant relief from the automatic stay of 11 U.S.C. § 362 and the Co-Debtor stay of § 1301 to permit Movant to exercise all of its state law rights and remedies against the Vehicle and the non-filing Co-Debtor to collect the balance owed on the Note.

WHEREFORE, Movant prays that the Court grant relief as follows:

1) modify the automatic stay of 11 U.S.C. § 362 and the Co-Debtor stay § 1301 as to the Vehicle to permit Movant to exercise all of its state law rights and remedies against the Vehicle and the non-filing Co-Debtor to collect the balance owed on the Note.

2) award Movant its attorneys' fees as provided for in the Note;

4

3) provide that any Order entered shall become effective and enforceable immediately upon

entry irrespective of Fed. R. Bankr. P. 4001(a)(3).

This 24th day of July, 2019.               Respectfully submitted,

KAPLAN, BOGUE & COOPER, P.C.

/s/_____

Virginia B. Bogue, Georgia Bar No. 065695
5901 Peachtree Dunwoody Road
Suite 415-B
Atlanta, GA 30328
(678) 384-7016 telephone
*vbogue@kbclegal.com*
Attorneys for Georgia United Credit Union

5

# *Exhibit "1"*

DocuSign Envelope ID: BFA00D27-4CFD-47E1-843B-E870AA9D0C3F



**Georgia United Credit Union**
6705 Sugarloaf Parkway
Duluth, GA 30097
888.493.4328

**NON-BORROWER
PLEDGE OF SHARES AND
SECURITY AGREEMENT**

| BORROWER'S NAME | MEMBER ACCOUNT NUMBER | DATE |
|---|---|---|
| JAMES A MANTOOTH | 7667 | 04/27/2017 |
| CO-BORROWER'S NAME | LOAN ID NUMBER | AMOUNT OF LOAN OR CREDIT LIMIT |
|  | 01 | $20,001.67 |

NAME AND ADDRESS OF NON-BORROWER
**ALICIA DENISE RICH 907 VIRGINIA AVE CHATSWORTH GA, 30705**

### COLLATERAL DESCRIPTION

| SHARES ON ACCOUNT: | All sums on deposit with Georgia United Credit Union, including, but not limited to, the following accounts: | | |
|---|---|---|---|
| | Account No. _____ | Account No. _____ | Account No. _____ |

| MOTOR VEHICLE: | YEAR | MAKE | MODEL | BODY TYPE | SERIAL NUMBER or VIN |
|---|---|---|---|---|---|
| | 2011 | CHEVROLET | SUBURBAN | | 1GNSCJE07BR258813 |

| OTHER COLLATERAL: | |
|---|---|

### NOTICE TO NON-BORROWER

You are being asked to pledge collateral for Borrower's debt. Think carefully before you do. If the borrower doesn't pay the debt, we can take your collateral.

You should be sure that you want to accept this responsibility.

Your pledge will cover the full amount of the debt, and may also cover other costs such as late fees or collection costs, which increase this amount.

The Credit Union can take your collateral without first trying to collect from the Borrower.

### PLEDGE OF SHARES AND SECURITY AGREEMENT

IN THESE AGREEMENTS, THE WORDS "YOU" AND "YOUR" MEAN ANY AND ALL PERSONS WHO EXECUTE THIS NON-BORROWER PLEDGE OF SHARES AND SECURITY AGREEMENT ("AGREEMENT"). THE WORDS "WE," "US," "OUR" OR "CREDIT UNION" MEANS THE CREDIT UNION NAMED ABOVE. "BORROWER" MEANS THE ABOVE NAMED BORROWER(S).

**Security Interest; Description of Collateral:** By signing below, you grant us a security interest in the above-described property (hereinafter referred to as "Collateral"). The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. If the value of the Collateral declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement.

**CONSENSUAL PLEDGE OF SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** If the Collateral described above is your shares in the Credit Union, **you grant us, and we impress, a lien on your shares in the Credit Union.** We also have similar statutory lien rights in your shares under the Federal Credit Union Act and/or applicable state law, as well as the common law right to set-off and administrative freeze. "Shares" and "share accounts" means any and all funds, regardless of the source of those funds, in any joint or individual account held and whether your obligation under the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which you do not have vested ownership interest.

If Borrower defaults, we may apply the funds in your share accounts to the above obligation, without any legal process, court proceeding or any notice to any owner of the affected share accounts, unless applicable law so requires. **You specifically agree that we have the right to place an administrative freeze on any of your share accounts** subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. These rights are multiple and we can exercise one or all of them.

**No Liability for Dishonor:** We shall not have any liability relating to the dishonor or other return of any check or other item occurring as a result of us exercising our lien rights or good-faith freezing of your accounts.

**Ownership of the Collateral:** If you are granting a security interest in property you already own, you promise that the property is free of all security interests except that given to us or disclosed prior to the loan.

You promise that you have informed us of any and all co-owners of the Collateral and/or any other person with an interest in or claim against the property. You shall not sell or lease the Collateral or use it as security for a loan with another creditor until the loan is repaid. You shall not allow another security interest or lien to attach to the Collateral either by your actions or by operation of law.

**Protecting the Security Interest:** You shall take any steps necessary for us to perfect our security interest in the Collateral. If asked to do so, you shall sign a financing statement or similar instrument to perfect our security interest and/or to protect our security interest from the claims of others.

**Use and Maintenance of Collateral:** Until the loan has been paid in full, you agree to (1) use the Collateral carefully and for the purpose it was intended and keep it in good repair; (2) obtain our written permission before making material changes to the Collateral or changing the address where the Collateral is kept; (3) allow us to inspect the Collateral; (4) Promptly notify us if the Collateral is damaged, stolen or abused; (5) Not use the Collateral for any unlawful purpose; (6) pay all taxes, assessments and liens regarding the Collateral.

**Notices:** We may meet all requirements for sending you notice of any kind if we send it to you via United States mail, at your last given address. We may also meet this requirement by delivering these notices to you electronically if you have agreed to receive notices by electronic means.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon shall also be secured by this agreement. Such amounts shall be added to Borrower's loan balance.

**Disposition of Collateral:** If Borrower defaults, we may repossess and sell the Collateral in a lawful manner. In such case, you will at our request assemble the Collateral and make it available to us at a place of our choosing, or we may enter the premises where the Collateral is kept and take possession, subject to applicable law. We may also render the Collateral unusable. If we decide to sell the Collateral at a public sale, private sale, or otherwise dispose of the Collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the Collateral

9015 LASER WORD F14872 Rev 1-2016

page 1 of 2

COPYRIGHT 2006 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: BFA00D27-4CFD-47E1-843B-E870AA9D0C3F

## PLEDGE OF SHARES AND SECURITY AGREEMENT

IN THESE AGREEMENTS, THE WORDS "YOU" AND "YOUR" MEAN ANY AND ALL PERSONS WHO EXECUTE THIS NON-BORROWER PLEDGE OF SHARES AND SECURITY AGREEMENT ("AGREEMENT"). THE WORDS "WE," "US," "OUR" OR "CREDIT UNION" MEANS THE CREDIT UNION NAMED ON PAGE 1. "BORROWER" MEANS THE ABOVE NAMED BORROWER(S).

we may collect from the proceeds of the sale reasonable expenses incurred in the retaking, holding and preparing the Collateral for and arranging the sale of the Collateral. We may also collect from the proceeds of the sale reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the Collateral.

**Attorney-In-Fact:** You hereby appoint us as your Attorney-In-Fact to perform any acts which we feel are necessary to protect the collateral and our security interest.

**Survival of Obligations:** This security agreement not only binds you, but your executors, administrators, heirs and assigns.

*Applies to Louisiana residents only:*

# Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, **you hereby confess judgment in our favor for all amounts secured by the Loan**, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts advanced under the Loan. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. You further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**NOTICE FOR ARIZONA OWNERS OF PROPERTY:** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address provided on this document unless you have given us a new address. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE -** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE – PLEASE READ CAREFULLY**
(a) Your requirement to maintain property insurance. You are required to carry insurance to protect your interest and our interest in the collateral securing this loan.
The insurance:
- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this loan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
- Must have a maximum deductible as set forth by us.
- Must be maintained in force for as long as the loan is outstanding.
- Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.
These requirements are solely in our discretion and we may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of your choice that is acceptable to us.
(b) Lender-placed property insurance. Please read carefully:
- **If you fail to maintain insurance satisfying the requirements set forth above, or if you fail to provide us proof of such coverage, we may, but do not have to, obtain insurance to protect our interest (not yours) in the property.**
- **The total cost of lender-placed insurance will be added to the loan balance.** The total cost of this insurance includes, but is not limited to, the premium, any administrative costs we incur, any commissions that may be earned, and other reasonable expenses related to your failure to maintain insurance. This cost will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term.
- Whether we obtain insurance, and the amount and types of coverage that we may obtain, is solely in our discretion. We may obtain this insurance from anyone we want, including an affiliate of ours, and such affiliate may earn a commission on the coverage.
- **The insurance placed by us is without benefit to you personally**, and is primarily for our protection. It may not adequately protect your interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- **Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own and may be different** than previous policies you may have had or policies that you may prefer.
- Any insurance placed by us will be effective as of the date your policy lapsed or, if you never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to you with respect to any agreements between us and our insurer or its agent.
(c) How to remove lender-placed property insurance. You may have the lender-placed coverage cancelled at any time by providing evidence to us that you have purchased insurance coverage satisfying the requirements set forth above. If you do so, you will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and your loan balance will be adjusted accordingly.
(d) Other. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.
(e) Default. If you fail to maintain insurance as set forth above, you will be in default of your loan. We may either place our own insurance on the collateral as explained above, or we can declare you in default and take all remedies set forth in your loan or security agreement or available to us under applicable law, including calling the loan immediately due.

9015 3-2015

## ACKNOWLEDGMENT & SIGNATURE

I pledge my shares and/or grant a security interest in the collateral described on page 1 of this document. Additionally, I hereby acknowledge receipt of the Notice to Non-Borrower and a copy of the Borrower's Advance Receipt or Closed-end Note which is the subject of this security interest.

| NON-BORROWER'S SIGNATURE *Lena Denise Rich* | DATE 4/27/2017 | NON-BORROWER'S SIGNATURE X | DATE |
| --- | --- | --- | --- |

—611900EEA8FC4F4...

9015 LASER WORD F14872 Rev 1-2016

page 2 of 2

COPYRIGHT 2006 Securian Financial Group, Inc. All rights reserved.

# *Exhibit "2"*

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586



**GEORGIAUNITED**
CREDIT UNION

**Georgia United Credit Union**
6705 Sugarloaf Parkway
Duluth, GA 30097
888.493.4328
www.georgiaunitedcu.org

**CLOSED-END NOTE, DISCLOSURE,
LOAN AND SECURITY AGREEMENT**

| BORROWER'S NAME AND ADDRESS | | DATE OF LOAN | LOAN MATURITY DATE | LOAN OFFICER |
|---|---|---|---|---|
| James A Mantooth | 722 BARKSDALE DR CHATSWORTH, GA 30705 | 4/27/2017 | 5/26/2021 | 261 |

| CO-BORROWER'S NAME AND ADDRESS | LOAN NUMBER | | BORROWER'S ACCOUNT NUMBER |
|---|---|---|---|
| | 01 | | 7667 |
| | BORROWER'S DATE OF BIRTH | CO-BORROWER'S DATE OF BIRTH | |

| **ANNUAL PERCENTAGE RATE:** The cost of your credit as a yearly rate. 7.040 % | **FINANCE CHARGE:** The dollar amount the credit will cost you. $3,139.55 | **Amount Financed:** The amount of credit provided to you or on your behalf. $20,001.67 | **Total of Payments:** The amount you will have paid after you have made all payments as scheduled. $23,141.22 |
|---|---|---|---|

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 47 | $482.11 | Monthly Starting 6/26/2017 |
| 1 | $482.05 | Final Payment Due On 5/26/2021 |

**Security:** You are giving a security interest to the Credit Union in your shares and deposits in the Credit Union, as well as the collateral described below. Collateral for other loans with us will also secure this loan, except for your home and household goods, and other exceptions set forth in your Security Agreement. Please see the Security Agreement for complete details.

| **Late Charges:** 20% of the interest due if your payment is late 10 days or more. | **Required Deposit Balance:** The Annual Percentage Rate does not take into account your required deposit balance. |
|---|---|

**Property Insurance:** You are required to obtain and maintain property insurance from anyone you want that is acceptable to the credit union. If you do not obtain and maintain the required property insurance, we will obtain it at your cost.

| **Prepayment:** If you pay off early, you will not have to pay a penalty. "e" means estimate. | See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and any prepayment refunds and penalties. |
|---|---|

**ITEMIZATION OF AMOUNT FINANCED**

| ITEMIZATION OF AMOUNT FINANCED OF $20,001.67 | AMOUNT GIVEN TO YOU DIRECTLY $0.00 | AMOUNT PAID ON YOUR ACCOUNT $20,001.67 | PREPAID FINANCE CHARGE $0.00 |
|---|---|---|---|

Amount Paid to Others on Your Behalf (Describe)                                      *a portion will be retained by us

| To | MBP* To: | To |
|---|---|---|
| To | GAP* To: | To |
| To | | To |
| To | | To |
| To | | To |
| To | | To |

**SECURITY INFORMATION**

| SHARES PLEDGED: | ACCOUNT NUMBER | AMOUNT | ACCOUNT NUMBER | AMOUNT |
|---|---|---|---|---|

| MOTOR VEHICLE: | YEAR 2011 | MAKE CHEVROLET | MODEL SUBURBAN | BODY TYPE | SERIAL NUMBER or VIN 1GNSCJE07BR258813 |
|---|---|---|---|---|---|

| OTHER COLLATERAL: | |
|---|---|

6110 LASER WORD FI18072 Rev 6-2016

page 1 of 8

COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

## LOAN SIGNATURES

You agree that the terms and conditions in the disclosure statement and the loan and security agreements attached hereto shall apply to this loan. If there is more than one borrower, you agree that all the conditions of the loan and security agreements governing this loan shall apply to both jointly and severally. You acknowledge that you have received a copy of the loan and security agreements and disclosure statement ("Note"). If you purchase optional loan products in connection with this loan, you understand that a portion of the premium or fee you pay will be retained by the credit union (or paid back to the credit union by the service provider) as compensation for making these services available to you. You also acknowledge receipt of the product application(s), disclosures, and contract(s) regarding the product(s).

**Negative Information Notice:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.**

**THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| BORROWER'S SIGNATURE | DATE |
|---|---|
| DocuSigned by: X _(signature)_ (SEAL) | 4/27/2017  4/27/2017 |

| CO-BORROWER   *OTHER OWNER | DATE |
|---|---|
| X (SEAL) | |

| CO-BORROWER   *OTHER OWNER | DATE |
|---|---|
| X (SEAL) | |

| CO-BORROWER   *OTHER OWNER | DATE |
|---|---|
| X (SEAL) | |

**\*OTHER OWNER:** Any person who has a property interest (other than as a renter or lessor) in the above described collateral signs here. The other owner, unless also a co-borrower, is not obligated to pay the debt, but understands that the credit union has a security interest in the collateral as explained in the Security Agreement.

☐ **CONSUMER'S CLAIMS AND DEFENSES NOTICE – IF CHECKED, SEE NOTICE BELOW**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### IMPORTANT DISCLOSURES FOR ACTIVE MEMBERS OF THE MILITARY AND THEIR DEPENDENTS:

*The following applies to members of the military and their dependents if:* (a) at the time your loan is made, you are an active member of the military or you are a dependent of an active member of the military (as those terms are defined in the Military Lending Act, 10 U.S.C. 987 and its implementing regulations); and (b) your loan is unsecured or secured by personal property that you did not purchase with the proceeds of the loan.

1. **NOTICE:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums or debt protection fees; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). To receive this notice verbally, please call 888.493.4328 during our normal business hours: 8:00 A.M. – 6:00 P.M. Monday – Friday.

2. This loan will not be secured by shares or deposits in any of your accounts unless you specifically agree to establish an account in connection with this loan in which funds deposited after the loan is given will secure this loan. Therefore, the following provisions in the Loan Agreement and Security Agreement do not apply to this loan: "Contractual Pledge of Shares"; any reference to pledge of shares, statutory liens, set-off, or administrative freeze contained in the "Security Agreement, Pledge of Shares; Statutory Lien; Set-off; Administrative Freeze" provision; the "Cross-Collateralization" provision to the extent it purports to cross-collateralize any of your other share or deposit accounts with us.

3. This loan is not subject to mandatory arbitration and therefore any reference to mandatory arbitration in this Loan Agreement and Security Agreement shall not apply to this loan.

4. If you are a Louisiana resident, the Louisiana-specific provisions contained in the Security Agreement do not apply to this loan.

COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

### APPLICATION AND DISCLOSURES for DEBT PROTECTION PLAN

**This Product is Optional.** Your purchase of the Debt Protection Plan ("Plan") is optional. Whether or not you purchase this protection will not affect your application for credit or the terms of any existing credit agreement you have with the Financial Institution. You may cancel the Program at any time. See the Program Agreement for an explanation of how the Program may be terminated.

|  |  | **Cost:** | |
|---|---|---|---|
| **I Elect:** *(Check only one box)* | | **Open-end Loans:** *per $1,000 of monthly outstanding loan balance* | **Closed-End Loans:** *Estimated Total Fee:* |
| **Consumer Loans:** | | | |
| **PLAN 1:** *Plan #542634*<br>**Death:**        Cancels loan balance<br>**Disability:**        Cancels up to 12 Payments<br>**Involuntary Unemployment:**   Cancels up to 6 Payments | | ☐ Single:   $3.33<br>☐ Joint:   $6.04 | ☐ Single: _____<br>☐ Joint: _____ |
| **PLAN 2:** *Plan #542635*<br>**Death:**        Cancels loan balance<br>**Disability:**        Cancels up to 12 Payments | | ☐ Single:   $2.03<br>☐ Joint:   $3.59 | ☐ Single: _____<br>☐ Joint: _____ |
| **PLAN 3:** *Plan #542636*<br>**Death:**        Cancels loan balance | | ☐ Single:   $0.96<br>☐ Joint:   $1.54 | ☐ Single: _____<br>☐ Joint: _____ |
| **PLAN 4:** *Plan #542637*<br>**Involuntary Unemployment:**   Cancels up to 6 Payments | | ☐ Single:   $1.84<br>☐ Joint:   $3.51 | ☐ Single: _____<br>☐ Joint: _____ |

**\* Benefit Maximums:** **Death Protection** cancels a maximum of $75,000.
Cancellations listed are per occurrence.
Monthly cancellations are limited to $1,000 per month, and $15,000 over the term of the loan, per each Protected Event and per each protected Borrower.

☐ No, I do not wish to apply for the voluntary Debt Protection Plan at this time. _____ (Borrower 1 initials) _____ (Borrower 2 initials)

**Application Eligibility:** _____ (not eligible)

To be eligible to apply, I must meet the following conditions. By signing this Application, I am stating that: (1) I am under age 70; (2) *If applying for Death or Disability protection:* During the last 2 years, I have not been advised of or treated for: cancer, heart attack or coronary artery disease, stroke, cirrhosis, AIDS, or any disorder of my immune system, or had any test showing evidence of antibodies to the AIDS virus (a positive HIV test); (3) *if applying for Disability or Unemployment protection:* I am presently working twenty-four (24) or more hours per week; (4) *If applying for Involuntary Unemployment:* I am not self-employed, and I have not received unemployment benefits within the past 2 years.

### BORROWER'S SIGNATURE

I acknowledge and agree that: **(a)** I meet the eligibility requirements listed above. If it is discovered that I do not meet the eligibility requirements above, my participation in the Plan will be terminated, I will receive a refund of any fees paid, and an otherwise valid claim will be denied. **(b)** I have received the disclosures herein and have thoroughly read the *Debt Protection Program Agreement ("Agreement")*, and agree to abide by the terms of the Agreement; **(c)** I authorize the Plan fees to be added to my loan each month; and **(d)** I understand that I may not be eligible for all benefits contained in the Plan. This document is hereby incorporated into Borrower's loan documentation as if fully set forth therein. **There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Program. See the Program Agreement for details.**

If I elect debt protection under a multi-featured consumer lending plan, my election will cover all advances under the plan, unless I instruct otherwise.

| BORROWER 1 SIGNATURE | DATE |
|---|---|
| X | 4/27/2017<br>04/27/2017 |

| BORROWER 2 SIGNATURE *(if applying for Joint Protection)* | DATE |
|---|---|
| X | |

6110 LASER WORD F118072 Rev 6-2016                    page 3 of 8                    COPYRIGHT 2005 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

## LOAN AGREEMENT

**Payments/Finance Charges:** For value received, you promise to pay, at our office, all amounts due. All payments shall be made pursuant to the disclosure statement on page 1 of this document. You understand that the finance charge and total of payments shown on page 1 of this document are based on the assumption that all installment payments will be made on the scheduled due dates. If you fail to pay any installment by the time it is due, you will pay additional interest on the overdue amount and your loan may not be paid in full at the end of the term. In such case, any remaining balance will be due in full immediately.

**Allocation of Payments and Additional Payments:** Payments and credits shall be applied in the following order: any amounts past due; any fees or charges owing, including any fees or premiums for additional products purchased; accrued interest or finance charges; outstanding principal. Payments made in addition to regularly scheduled payments shall be applied in the same order.

**Late Charges:** If you make a late payment, you agree to pay a late charge if one is disclosed on page 1 of this document.

**Borrower Responsibility:** You promise to notify us of any change in your name, address or employment. You promise not to apply for a loan if you know there is a reasonable probability that you will be unable to repay your obligation according to the terms of the credit extension. You promise to inform us of any new information which relates to your ability to repay your obligation. You promise not to submit false or inaccurate information or willfully conceal information regarding your creditworthiness, credit standing, or credit capacity.

**Perfection of Security Interest; Increase in Rate; Fee; Default:** If I fail to perfect my lien within 45 days of the loan date, you may take the necessary steps to do so and charge me a filing fee. This fee will be in the amount charged by the state and will be added to my loan balance. If you are unable to perfect your lien on the collateral pledged for any loan, or the value of the collateral deteriorates significantly, the **ANNUAL PERCENTAGE RATE** for that loan shall increase to 18.00%. Borrower's minimum monthly payment shall also increase accordingly. Credit Union may also, at its option, consider the loan to be in default and can call the loan immediately due and payable, in which case Borrower must pay the entire amount due in one lump sum. The loan while in default will bear interest at the highest rate allowed by law. Credit Union may waive or delay its right to declare default or to raise the rate at any time without losing those rights.

**Default:** *The following provision applies to borrowers in Idaho, Kansas, and Maine:* You will be in default if (1) you do not make a payment of the required amount when due; or (2) we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

*The following provision applies to borrowers in Wisconsin:* You shall be in default under this Agreement if any of the following occur: (a) If an amount exceeding one (1) full payment due under this Agreement is more than ten (10) days late or if the first or last payment due under this Agreement is more than forty (40) days late; OR (b) you breach any term or condition of this Agreement, which breach materially impairs your ability to pay amounts when due or materially impairs the condition, value, or protection of our rights to or in any collateral securing this transaction.

*The following provision applies to all other borrowers:* You shall be considered in default if any of the following occur: (1) If you break any promise made under this Loan Agreement or under the Security Agreement; or (2) if you do not use the money we loaned you for the purpose stated in your application; or (3) if we should, in good faith, believe that prospect of payment, performance or realization of the collateral, if any, is impaired; or (4) if you die; or (5) if you file a petition in bankruptcy, insolvency, or receivership or are put involuntarily into such proceedings; or (6) if the collateral, if any, given as security for this loan is lost, damaged or destroyed, or if it is levied against, attached, garnished, or seized for any reason under any authority; or (7) if you do not pay on time any of your current or future debts to us; or (8) if anyone is in default of any security agreement given in connection with any loan under this Note; or (9) If you make any false or misleading statements in any credit application or update of credit information; or (10) you are in default of any other loan or security agreement you have with the Credit Union; or (11) you use the Note for any illegal purpose or transaction as determined by applicable law. If you default, we may, at our option, declare this loan immediately due and payable, and you must immediately pay to us at that time the total unpaid balance, as well as the Finance Charge to date, and late charges and costs of collection permitted under law, including reasonable attorney's fees.

**Costs of Collection:** You shall pay all costs incurred by us in collecting any amount you owe or in enforcing or protecting our rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, and casualty insurance. *The following applies to all borrowers except Wisconsin borrowers:* Costs

of collection also include reasonable attorney's fees for any action taken by an attorney who is not our salaried employee in order to collect this loan or preserve or protect our rights and remedies, including, without limitation, pre-suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of our rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. *For Alabama borrowers:* attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. *For Georgia borrowers:* attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow.

**Action Upon Default:** *The following provision applies to borrowers in Colorado, District of Columbia, Kansas, Maine, Massachusetts, Missouri, Nebraska, and West Virginia:* Once you have defaulted, and after the expiration of any right you may have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance of the loan without giving you advance notice. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to you, or another rate if required by applicable law.

*The following provision applies to borrowers in Wisconsin:*

No Right to Cure Default: If you are in default under this Agreement, we must give a notice of default to you pursuant to Wisconsin Statutes sec. 425.104 - 425.105. You shall have fifteen (15) calendar days from the date the notice is mailed to you to cure the default. In the event of an uncured default, we shall have all the rights and remedies for default provided under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral. We may waive any default without waiving any other subsequent or prior default by you.

No Right to Cure: Pursuant to Wis. Stat. Sec. 425.105(3), you shall not have the right to cure a default if the following occur twice during the preceding twelve (12) months: (a) you were in default on the closed-end note; (b) we gave you notice of the right to cure such previous default in accordance with Wis.Stat.Sec. 425.104; and (c) you cured the previous default.

Nothing in this Agreement shall be construed to restrict our ability to exercise our rights under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral.

*The following provision applies to borrowers in all other states:* Once you have defaulted, we may, at our option, declare all amounts under the Note immediately due and payable, and you must immediately pay to us at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees. The principal balance in default shall bear interest at the contract rate.

**Delay In Enforcement:** We may delay enforcing any of our rights under this agreement without losing them.

**Irregular Payments:** We may accept late payments or partial payments, even though marked "payment in full," without losing any of our rights under this agreement.

**Co-borrowers:** If you are signing this agreement as a co-borrower, you agree to be equally responsible with the borrower, but we may sue either or both of you. We do not have to notify you that this agreement has not been paid. We may extend the terms of payment and release any security without notifying or releasing you from responsibility on this agreement.

**Governing Law:** These agreements shall be construed and enforced in accordance with the laws of the State in which our headquarters are located. *If you have entered into a mandatory arbitration agreement in connection with this loan:* if any provisions within this Agreement pertaining to jurisdiction and venue are inconsistent with the arbitration agreement, the arbitration agreement will govern.

**Change In Terms:** The terms of this Closed-end Note, Disclosure, Loan & Security Agreement, including any fees disclosed, are subject to change without prior notice, subject to applicable law.

---

**Contractual Pledge of Shares:** You pledge all your shares and deposits in the credit union, including future additions, as security for this loan. In case you default, we may apply these shares and deposits to the payment of all sums due at the time of default, including costs of collection and reasonable attorney's fees. No lien or right to impress a lien on shares and deposits shall apply to any of your shares which may be held in an "Individual Retirement Account" or "Keogh Plan."

---

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

**State Notices:**

*NOTICES TO WISCONSIN BORROWERS:* No provision of a marital property agreement, a unilateral agreement under Wis. Stat. Section 766.59, or a court decree under Wis. Stat. 766.70 adversely affects the interest of the Credit Union unless prior to the time the credit is extended, the Credit Union is furnished with a copy of the agreement or statement, or has actual knowledge of the adverse provision when the obligation to the Credit Union is incurred.

*NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, THE BORROWER MAY HAVE TO PAY THE DIFFERENCE.*

*NOTICE TO UTAH BORROWERS:* This written agreement is a final expression of the agreement between you and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

*NOTICE FOR ARIZONA OWNERS OF PROPERTY:* It is unlawful for a borrower to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address you provided on this document unless you have given the Credit Union a new address. It is your responsibility to notify the Credit Union if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

*NOTICE TO CALIFORNIA RESIDENTS:* By signing this Note, you specifically agree that the Credit Union may access the records of the California Department of Motor Vehicles from time to time to obtain your current mailing address, and by so agreeing, you are specifically waiving your rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

*NOTICE TO TEXAS BORROWERS– INSURANCE REQUIRED:* You are required to: (i) keep the collateral insured against damage in the amount of the loan or another amount if we so specify; (ii) purchase this insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (iii) name us as the person to be paid under the policy in the event of a loss. You must also provide us a copy of the policy and proof of the payment of premiums if we so request. If you fail to meet any of these requirements, we may obtain collateral protection insurance on your behalf at your expense.

*For Missouri Residents:* Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

*For Vermont Residents: NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS LOAN MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THE LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.*

*OHIO RESIDENTS ONLY:* The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

*WASHINGTON AND OREGON RESIDENTS ONLY:*
WARNING: UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE. YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S OR OREGON'S MANDATORY LIABILITY INSURANCE LAWS.

**SECURITY AGREEMENT**

**Security Interest; PLEDGE OF SHARES; Statutory Lien; Set-off; Administrative Freeze:** To secure the payment of this loan and all expenditures incurred by the credit union in connection with this loan: (a) **You grant the Credit Union a security interest in the property described on Page 1 of this document ("Collateral").** The security interest includes all increases, substitutions and additions to the secured property, proceeds from any insurance on the secured property and all earnings received from the secured property. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. If the value of the property declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement. (b) **YOU GRANT AND PLEDGE TO US A CONSENSUAL LIEN ON ALL SUMS ON DEPOSIT** to secure your obligations to the credit union pursuant to applicable state law. "All sums on deposit" and "shares" for purposes of this pledge means all deposits in any share savings, share draft, club, certificate, P.O.D., revocable trust or custodial accounts(s), whether jointly or individually held, that we have on deposit now or in the future, all of which are deemed "general deposits" for the purpose of this pledge. Your pledge does not include any IRA, Keogh, tax escrow, irrevocable trust or fiduciary account in which you do not have vested ownership interest. (c) You acknowledge and agree to impressment of the Credit Union's statutory lien rights under the Federal Credit Union Act and/or applicable state law as of the date of your loan, which gives us the right to apply the sums in your account(s), to satisfy any obligations you owe to the credit union, regardless of contributions at the time of default, and without further notice to you or any owner of the account(s). (d) You acknowledge and agree to our "common law" right to set off under applicable state law which authorizes us to apply the funds in any joint or individual account to any obligations owed to us if you default or fail to pay or satisfy any obligation to us without any legal process, court proceeding or any notice to any owner of the account(s) affected hereunder or otherwise under this Agreement. (e) You specifically agree that we have a right to place an administrative freeze on any of your joint or individual account(s) and that such action shall not violate 11 USC 362 or other applicable law. IF YOU HAVE A CREDIT CARD WITH US, OUR RIGHTS ALSO APPLY TO THAT CREDIT CARD ACCOUNT.

**Multiple Rights; Cumulative Remedies:** You understand and agree that the Credit Union has multiple rights as enumerated above and that the remedies are cumulative. Nothing herein shall limit or restrict the remedies available to us following any event of default under the terms of your loan documents.

**Cross-collateralization:** Property given as security for this loan or for any other loan Borrower has with the credit union will secure all amounts Borrower owes the credit union now and in the future. However, property securing another debt will not secure this loan if such property is Borrower's principal residence (unless the proper rescission notices are given and any other legal requirements are satisfied), or are non-purchase money household goods. IF YOU HAVE A CREDIT CARD WITH US, THIS CROSS-COLLATERALIZATION CLAUSE ALSO APPLIES TO THAT CREDIT CARD.

**Release of Lien:** We will not release any lien on any collateral under this Note if you are delinquent on, or in default on, any other loan you have with us. For example, if you are in default on a line of credit, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**Transfer of Collateral:** You will not change the location of, sell or transfer the collateral unless you have our prior written consent.

**Good Title:** You warrant that you have good title to the collateral, free of all security interests except that given to the credit union and except for any interest of a non-co-maker owner of the collateral who has signed the agreement in the indicated place.

**Maintenance of Collateral:** You will pay all taxes, assessments, and liens against or attached to the property described and further agree to keep the property in good condition, housed in a suitable shelter. You agree to execute financing statements and security agreement amendments at our request and will defend the property against adverse third party claims.

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

**Additional Security:** Should we feel at any time that the security presented has diminished in value, or for any reason feel that additional security is required, you agree to assign to us within ten (10) days whatever additional security we feel is necessary to protect us against possible loss.

**Actions Upon Default:** If a default as defined in the Loan Agreement should occur, we, or a third party designated by us, have the authority, upon such default, to repossess and sell the collateral in a lawful manner. This includes authority to take possession of any personal property contained in the collateral. In such cases, we or our authorized representatives may, at our option, enter the premises where the collateral is kept and take possession, subject to applicable laws. We have the right to render the property pledged as collateral unusable and may dispose of the collateral on the premises where the collateral is kept. If we decide to sell the collateral at a public sale, private sale or otherwise dispose of the collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the collateral we may collect from you reasonable expenses incurred in the retaking, holding and preparing the collateral for and arranging the sale of the collateral. We may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the property. Unless you default, you may keep possession of the property (collateral) described and use it in any lawful manner consistent with this agreement or with the insurance policy on the collateral. You understand that we have certain rights and legal remedies available to us under the Uniform Commercial Code and other applicable laws, and that we may use these rights to enforce payment if you default. In the event of default, you will at our request assemble the property (collateral) and make it available to us at a place of our choosing. If we decide to waive this default, it will not constitute waiver of any other subsequent defaults.

**Attorney-in-Fact:** We are hereby appointed as your Attorney-in-Fact to perform any acts which we feel are necessary to protect the collateral and the security interest which this agreement creates.

**Joint Borrowers:** If there is more than one borrower, your obligations under this agreement are joint and several, each being equally responsible to fulfill the terms of this agreement.

**Others Bound:** This security agreement not only binds you, but your executors, administrators, heirs, and assigns.

**Further Assurances:** You agree to execute any further documents, and to take any further actions, reasonably requested by Credit Union in order to evidence or perfect the security interests granted herein or to effectuate the rights granted to Credit Union.

**Governing Law:** This Security Agreement is being executed and delivered in, and is intended to be performed in, the State in which our headquarters are located and shall be construed and enforced in accordance with the laws of the State in which our headquarters are located, except to the extent that the Uniform Commercial Code provides for the application of the law of another state.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon or any other advance necessary to perfect or protect our security interest shall also be secured by this agreement. Such amounts shall be added to your loan balance and your minimum payment due shall be increased or your loan term extended accordingly.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, you hereby confess judgment in our favor for all amounts secured by the Note, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts under the Note. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. You further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of

foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE – PLEASE READ CAREFULLY**

(a) Your requirement to maintain property insurance. You are required to carry insurance to protect your interest and our interest in the collateral securing this loan. The insurance:

- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Loan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
- Must have a maximum deductible as set forth by us.
- Must be maintained in force for as long as the loan is outstanding.
- Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.

These requirements are solely in our discretion and we may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of your choice that is acceptable to us.

(b) Lender-placed property insurance. Please read carefully:

- If you fail to maintain insurance satisfying the requirements set forth above, or if you fail to provide us proof of such coverage, we may, but do not have to, obtain insurance to protect our interest (not yours) in the property.
- The total cost of lender-placed insurance will be added to the loan balance. The total cost of this insurance includes, but is not limited to, the premium, any administrative costs we incur, any commissions that may be earned, and other reasonable expenses related to your failure to maintain insurance. This cost will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term.
- Whether we obtain insurance, and the amount and types of coverage that we may obtain, is solely in our discretion. We may obtain this insurance from anyone we want, including an affiliate of ours, and such affiliate may earn a commission on the coverage.
- The insurance placed by us is without benefit to you personally, and is primarily for our protection. It may not adequately protect your interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own and may be different than previous policies you may have had or policies that you may prefer.
- Any insurance placed by us will be effective as of the date your policy lapsed or, if you never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to you with respect to any agreements between us and our insurer or its agent.

(c) How to remove lender-placed property insurance. You may have the lender-placed coverage cancelled at any time by providing evidence to us that you have purchased insurance coverage satisfying the requirements set forth above. If you do so, you will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and your loan balance will be adjusted accordingly.

(d) Other. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.

(e) Default. If you fail to maintain insurance as set forth above, you will be in default of your loan. We may either place our own insurance on the collateral as explained above, or we can declare you in default and take all remedies set forth in your loan or security agreement or available to us under applicable law, including calling the loan immediately due.

6100 3-2015

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

## PROGRAM AGREEMENT for DEBT PROTECTION PLAN

*As used in this Debt Protection Plan Program Agreement ("Agreement"), "You", "Your" or "Borrower" means the person(s) who are obligated to repay a loan to us who have purchased debt protection under this Agreement. "We", "Our", "Us" means, Georgia United Credit Union, 6705 Sugarloaf Parkway, Duluth, GA 30097 . "Plan Administrator" means Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, Minnesota, 55101, or one of its affiliates, or a contracted third party.*

This Agreement amends your loan or credit agreement. By enrolling in this Debt Protection Plan ("Plan"), you agree to abide by the terms of this Agreement. The Debt Protection Application is a part of this Agreement and is hereby incorporated as if fully set forth herein.

### DEFINITIONS

**Effective Date** means that date on which your Plan becomes effective, which is: the later of (1) the date you enroll in, and your eligibility is approved for, the Plan; or (2) the date of your first advance under a protected multi-featured lending plan.

**Working twenty-four (24) or more hours per week:** This term means that you are actively working for income for twenty-four (24) hours or more per week. Working means actually performing your job duties and not off of work due to leave of absence; layoff; routine or seasonal work interruption; or any other reason.

**Outstanding Balance and Payment:** "Outstanding Balance" means the outstanding loan balance as of the date a Protected Event occurs. "Payment" means the minimum monthly loan payment scheduled under your loan agreement. Outstanding Balance and Payment both refer to the protected amount under the Plan and include principal, interest, the Plan fee and any amounts which the creditor and borrower agreed to finance as part of the loan at the time the credit is extended. It does not include late fees or other fees; real estate taxes or property insurance premiums; or any amount that represents defaults in scheduled payments of either interest or principal. A scheduled lump-sum Balloon payment will only be protected if the Protected Event cancels the Outstanding Balance. Additionally, any advance taken during any period of Involuntary Unemployment or Disability will not be protected and the payment for that advance will not be cancelled. You will be responsible for re-paying any amounts that are not cancelled.

**Pre-existing condition:** means a condition for which you received or had medical treatment, advice or diagnostic tests either for that same condition or a related condition within the six-month period immediately prior to the Effective Date and immediately prior to each and every advance taken. However, any Protected Event resulting from any such condition or a related condition will not be excluded if the Protected Event commences six months or more after the Effective Date of protection or six months or more after the advance is taken.

### TERMS OF PROTECTION

**Who is eligible for protection?**

This Plan protects an eligible Borrower ("Borrower 1") against Protected Events that occur while you are enrolled in the Plan ("Single Protection"). At an additional cost, you may purchase protection for a Co-Borrower ("Borrower 2") against the Protected Events within the Plan purchased ("Joint Protection"). Co-signers, guarantors, and non-borrower owners of collateral are not eligible for protection.

**What types of loans are eligible for protection under the Plan?**

The following types of loans are eligible for protection if the Plan is made available to you on that loan type: closed-end consumer loans if the loan has a term of 120 months or less; multi-featured lending plans and consumer lines of credit; and credit cards.

**What is the Plan Fee and how is it collected?**

The Plan Fee is the amount you pay for the Protection. It is calculated by applying the rate per $1,000 of your monthly outstanding balance or loan amount and will be charged and collected monthly. For closed-end loans, if the Protection is purchased at loan closing, the fee becomes part of your required monthly loan payment. For open-end loans, the fee will be added to your outstanding balance as an advance each month, increasing your minimum payment due. If Debt Protection is added after the start of a closed-end loan, the fee will be added to your outstanding balance as an advance each month; in such a case, we may either increase your minimum monthly payment or extend the term of your loan. Interest will accrue on the debt protection advance. If you fail to pay the fee, we can cancel the protection or, at our option, add the fee to your outstanding balance upon which it will accrue interest. Such addition may extend the term of your loan.

**Can the Plan Fee and terms of this Agreement Change?**

Yes. We can change the terms of this Agreement, including the rates, at any time. If we do so, you will be provided prior notice and an opportunity to cancel your Agreement under the Plan.

**Can this Agreement be contested?**

Yes. If we find that you did not meet the eligibility requirements at the time of your application, your protection under the Plan will be removed, you will receive a refund of fees paid, and an otherwise valid claim will be denied.

### PROTECTED EVENTS

The following describes the types of Protected Events and the protection afforded under each Plan:

**DEATH** *(Plans 1-3; Joint Protection Available)*

**What is the Death benefit?**

For each protected borrower, we will cancel the amount of your Outstanding Balance as of the date of death, up to $75,000. If two protected Borrowers die simultaneously, we will cancel the Outstanding Balance, up to $75,000. In no event will an excess of $75,000 be cancelled.

**DISABILITY** *(Plans 1 & 2; Joint Protection Available)*

**What does Disability mean and how do I qualify for Disability?**

Disability means your continuous inability, due to sickness or injury, to perform the substantial and material duties of your regular occupation and you are under the regular care and treatment of a licensed physician or licensed health care provider. To qualify for Disability protection, you must be disabled for 30 consecutive days. Benefits begin to accrue on the first (1st) day that you are disabled.

**What amounts are cancelled under the Disability protection?**

For each occurrence of Disability, we will cancel 1/30th of the Payment for each day that you are disabled beginning with the first (1st) day of Disability and continuing for up to twelve (12) Payment cancellations. However, cancellations will immediately cease if you recover or return to work; or if the loan is paid off, is refinanced, or is discharged for any reason. Cancellation is limited to a total of $15,000 over the term of the loan, regardless of the number of occurrences. The maximum monthly cancellation is $1,000.

**What if the same or related disability occurs?**

*Please see the "What if I suffer a recurrence?" question in the General Provisions section below.*

**INVOLUNTARY UNEMPLOYMENT** *(Plans 1 & 4; Joint Protection Available)*

DocuSign Envelope ID: 7B07B4C4-6086-479A-B9E1-59A10C925586

| BORROWER | LOAN NUMBER | MEMBER NUMBER | DATE OF LOAN |
|---|---|---|---|
| James A Mantooth | 01 | 7667 | 4/27/2017 |

**What does Involuntary Unemployment mean and how do I qualify for protection?**

Involuntary Unemployment means that you involuntarily lost your employment in which you were actively working for income for twenty-four (24) hours or more per week, and are receiving, unemployment benefits.

To qualify for Involuntary Unemployment protection, the following requirements must be met:

1.   You are involuntarily unemployed for 30 consecutive days; and
2.   You are receiving unemployment benefits for the period of unemployment for which you are making a claim under this Agreement.

**What amounts are cancelled under Involuntary Unemployment protection?**

We will cancel 1/30th of the Payment for each day you are involuntarily unemployed, beginning with the first (1st) day of involuntary unemployment and continuing for (a) up to six (6) Payment cancellations per occurrence of Involuntary Unemployment; or (b) until you discontinue receiving unemployment benefits for any reason; or (c) you regain employment; whichever is earlier. Cancellation is limited to a total of $15,000 over the term of the loan, regardless of the number of occurrences. The maximum monthly cancellation is $1,000.

## EXCLUSIONS

*Exclusions apply to both the Outstanding Balance and any and all advances under a multi-featured consumer lending plan.*

**Benefits will not be provided under any Protected Event if the Protected Event:**

(1) is due to suicide committed within the first 2 years of protection; (2) is due to an intentionally self-inflicted injury; (3) is due to a Pre-existing Condition; (4) results from war or any act of war, whether declared or undeclared; (5) occurs on or after your 70th birthday; (6) results from the same occurrence for which you have already received maximum benefits under this Agreement. Benefits will also not be provided under one Protected Event if you are currently receiving benefits under another Protected Event.

The following exclusions apply in addition to the above:

**Benefits will not be provided under Disability protection if:**

(1) the disability is related to a normal pregnancy, normal childbirth, or elective abortions. Complications due to pregnancy or childbirth will only be protected if the complications themselves are the cause of the disability.

**Benefits will not be provided under Involuntary Unemployment protection if:**

(1) your job is terminated because: (a) you retire; (b) you quit or resign your employment for any reason; (c) you lose your employment due to (i) willful or criminal misconduct; (ii) a normal, routine or seasonal shut-down; (iii) discharge from active military service; (iv) disability caused by sickness or injury; or (v) a strike, lockout, or labor dispute; (2) the involuntary unemployment commences within 90 days after your Effective Date; or (3) you received unemployment benefits within 2 years prior to applying for the Plan.

## GENERAL PROVISIONS

**How do I obtain benefits and verify a Protected Event under the Plan?**

To obtain benefits under the Plan, you must notify us of a Protected Event within 30 days or as soon as possible, but no later than six (6) months after the occurrence of the Protected Event, and provide any documentation or information required by us at the time of your claim and/or throughout the period for which Payments are being cancelled. You must be able to verify the Protected Event to our satisfaction. If your delay in filing a claim prevents us in any way from determining eligibility under the Plan, no benefit will be issued.

**What if I sustain an unrelated injury or sickness while I am disabled?**

If you are disabled ("original occurrence") and sustain an additional sickness or injury which would be in and of itself disabling, the additional sickness or injury will not be considered a new occurrence of Disability, but rather will be considered the same occurrence. This means that you will receive benefits only if you did not exhaust your maximum per-occurrence benefits in connection with the original occurrence.

**What if I suffer a recurrence of the same or related Protected Event?**

If you incur a claim for the same type of Protected Event again within six (6) months after you have recovered or returned to full-time work, we will consider this a continuation of the prior event. (For disability, however, this only applies if you are disabled due to the same condition.) This means that the maximum number of cancellations per occurrence for the prior event will still apply; if that maximum was already reached, no benefits will be issued. If you incur a claim for the same type of Protected Event again more than six (6) months after you have recovered or returned to full-time work, we will consider this a new event and the terms and conditions of the Plan apply as if no prior event occurred. This provision applies whether you return to work full-time with the same or different employer.

**What is the status of my loan following the occurrence of a Protected Event?**

During the time it takes to process your request for benefits, you are responsible for making your monthly payment by the due date. Once benefits begin, you are responsible for any difference between the minimum payment due on the loan and the amount that is cancelled.

**What if the term of my loan ends while I am receiving cancellations under the Plan?**

Regardless of the number of cancellations you may otherwise be entitled to, cancellations will cease if the loan is paid off, refinanced, sold or transferred, or discharged for any reason.

**How can the Plan be terminated?**

You may terminate this Agreement at any time by writing us at Georgia United Credit Union, 6705 Sugarloaf Parkway, Duluth, GA 30097. If you do so within thirty (30) days of your enrollment in the Plan, we will credit your loan account for any fees charged for this protection. We can terminate this Agreement by giving you written notice at least thirty (30) days in advance of the termination. Termination by us or you will be effective on the first of the month following termination. Fees for the month in which notice of termination is received will still be due and collected from the loan payment.

Your Plan participation will terminate without advance notice if (1) your loan is paid off, refinanced, sold or transferred, or discharged for any reason; (2) required loan payments are past due by 90 days or more; if you bring your loan current after your Protection has been terminated for delinquency, protection will not be reinstated automatically and you must reapply for the Plan. (3) you fail to pay the Plan Fee; (4) when you reach age 70 or die. For Joint Protection, when the oldest borrower reaches age 70, the oldest borrower's protection terminates. Protection will automatically convert to Single Protection for the younger borrower and the monthly fee will be adjusted accordingly. Once the younger borrower reaches age 70, all protection will terminate. If either borrower dies, any death benefits available will be paid, subject to the terms of this Agreement, and the protection for that borrower will terminate; or (5) the protected Outstanding Balance is paid off under the terms of the Plan or all maximum cancellations are reached.

**What are the tax implications?**

You may be subject to federal, state and local taxes on the amount of your cancelled loan payment or balance. You should consult your tax advisor. We or the Plan Administrator do not provide you with guidance on the tax implications, if any, of a cancelled debt.

**What if I have questions about the Plan?**

Telephone us at 770-476-6400 or write to us at Georgia United Credit Union, 6705 Sugarloaf Parkway, Duluth, GA 30097 if you have any questions regarding this Plan.

*Exhibit "3"*

# Georgia Certificate of Title

7133

DISCLAIMER: DO NOT ACCEPT THIS TITLE WITHOUT THE SECURITY THREAD LOCATED APPROXIMATELY TWO INCHES FROM LEFT EDGE

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | TYPE OF BODY | MODEL | | CYL | DATE ISSUED |
|---|---|---|---|---|---|---|---|
| 1GNSCJE07BR258813 | CHEVROLET | 2011 | MULTI-PURPOSE V | C15 | | 8 | 01/26/2016 |

| DATE VEHICLE PUR | FUEL | NEW OR USED | ODOMETER | PREVIOUS TITLE NBR / STATE OF ISSUE | NBR OF LIENS | COLOR | CURRENT TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 12/21/2015 | FLEXIBLE | USED | 116472 | 91112784        /TN | 1 | BLK | 776232160215091 |

*ODOMETER READING IS ACTUAL MILEAGE OF THE VEHICLE UNLESS OTHERWISE INDICATED BELOW.

## OWNER

ALICIA DENISE RICH
904 VIRGINIA AVE
CHATSWORTH GA 30705-2651

MAIL TO:                                                TO

GA UNITED CREDIT UNION
6705 SUGARLOAF PKWY
DULUTH  GA  30097

### 1ST LIEN OR SECURITY INTEREST

GA UNITED CREDIT UNION
6705 SUGARLOAF PKWY
DULUTH  GA  30097

### 2ND LIEN OR SECURITY INTEREST

### 3RD LIEN OR SECURITY INTEREST

The Georgia Department of Revenue issued this title pursuant to the Motor Vehicle Certificate of Title Act and this title is subject to its provisions. The Department certifies that on application duly made, the person named herein is registered as the lawful owner of the vehicle described subject to any liens or security interests set forth and such liens or security interests as may subsequently be filed with the Commissioner.

## RELEASE OF LIEN OR SECURITY INTEREST

| | DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|---|
| 1ST LIEN | | | BY |
| 2ND LIEN | | | BY |
| 3RD LIEN | | | BY |

039059001

*Lynnette T. Riley*

STATE REVENUE COMMISSIONER

# *Exhibit "4"*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-41364-bem |
| | ) | |
| ALICE DENISE RICH, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| GEORGIA UNITED CREDIT UNION, | ) | |
| | ) | |
| Movant, | ) | CONTESTED MATTER |
| v. | ) | |
| | ) | |
| ALICIA DENISE RICH and JAMES A. | ) | |
| MANTOOTH, non-filing Co-Debtor, and | ) | |
| MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing ***Motion for Relief from Automatic Stay and Co-Debtor Stay and Notice of Hearing*** by placing a copy of same in the United States Mail to the following parties with adequate postage affixed to insure delivery thereon:

Alicia Denise Rich
469 Cotton Circle
Chatsworth, GA 30705-6303

James A. Mantooth
722 Barksdale Drive
Chatsworth, GA 30705

Mary Ida Townson
Chapter 13 Trustee
Suite 1600
285 Peachtree Center Ave., NE
Atlanta, GA 30303

Dan Saeger
Saeger & Associates, LLC
Suite D
706 S. Thornton Avenue
Dalton, GA 30702

This 24th day of July, 2019.

Respectfully submitted,

KAPLAN, BOGUE & COOPER, P.C.

/s/
_____
Virginia B. Bogue, Georgia Bar No. 065695

{File: 00140979.DOCX / }